Mr Justice M’Lean
dissenting;
The question involved in this case is important, as it regards the construction of a highly penal law of the .'union ; and of still greater importance, as it respects the powers of stale officers under an act of congress which confers on them no special authority.
In the third section of the act of congress of the 1st of March 1823, it is provided, that “ if any person shall swear or affirm falsely, touching the expenditure of public.money, or in support of any claim of theUnited States, he orsheshall, upon conviction thereof, sutler as for wilful and corrupt perjury.”. And in .the thirteenth section of the act of the 3d of -March 1825, it is declared,-that ?‘if any person, in any case,, matter, hearing or *258 other proceeding, when an oath or affirmation shall be required to be taken or administered under or by any law or laws of the United States, shall, upon taking such oath or affirmation, knowingly and willingly swear or affirm falsely, every person so offending shall be deemed guilty of perjury, &c.”
■ These are the acts under which.the offence of false swearing is charged against the defendant. The oath was administered by Josiah Reed, .a justice of the peace for Bath county, in the-state of Kentucky, with the view of obtaining mohey from the government. It does not appear that in this law or any other the claim asserted was required to be substantiated by oath ; but it was proved that such requirement was made by the secretary of the treasury, whose duty it was to decide on the merits of the claim. Nor does it appear that any authority has been given byany act of congress to a justice of the peace to administer an oath in such a case; and the question arises, whether, admitting the affidavit of Bailey to be false, justice Reed had power to administer such an oath Í If it shall be found that jno such power existed, the false swearing, though highly immoral, is not an offence under either of the acts of congeess which have been cited.
The statutes of 1823 and 1825 above cited, have extended the crime of perjury, or the punishment annexed to it, to a false swearing; which neither by the common law nor the previous acts of congress, constituted perjury. Beyond this these acts do not go. They do not dispense with any of the essential requisites, beyond what is expressed, to constitute the crime of perjury.
The definition of perjury at common law, as given by Haw-kihs, is, “ a wilful, false oath, &c. in any procedure in a course of justice.” This offence may be commited in depositions, affidavits, &c. taken out of a court of justice.
By the act of congress. of 1790, it is provided, that “ if any person shall wilfully and corruptly commit perjury on his or her oath or affirmation, in any suit,, controversy, matter or cause depending in any of the courts of the United States, or in any deposition taken pursuant to the laws of the United States, every person so offending shall suffer, &c. In 4 Black. Com. 136, it is stated, “ the law takes no notice of'any perjury but such as is committed in some court of justice having power *259 to administer an oath, or before some magistrate or proper officer invested with a similar authority.” And lord Coke, in 3 Inst. 165, says, “ that no old oath can be altered or new oath raised, without an act of parliament; or any oath administered by any that hath not allowance by the common law, or by act of parliament.”
No one can doubt, that an oath administered by ai person without authority is a void act. It imposes no legal obligation on .the person swearing to state the truth; nor is he punishable under any law for swearing falsely in such a case.
The -prosecution in this case is attempted to be sustained on two. grounds.
1. From the general language of the law defining the of-fence of false swearing.
2. From the usage of the treasury department.
And first, as to the language of the act under which this prosecution was commenced. The act is general in its language against “ any person who shall swear falselybut it gives no authority, either general or special,- to administer an oath. This power must be sought in other acts of congress, or in a judicial office to which the power is incident.
The federal government is one of limited and specific powers., In the discharge of its functions, except in certain specified, cases, its acts are as distinct from those of a state government, as if they were foreign to each other. The officers of the one government, as such, can do no official acts under the other : the sources of their authority'are different, as well as their duties-and responsibilities.
When a law for the punishment of offences is passed by either the federal or a state government, it can only operate within the proper jurisdiction. The officers of the federal government can take no cognizance of the penal laws of a state; nor can the judiciary of a state, in my opinion, carry into effect the criminal laws of the union. If this could be done, it would consolidate the jurisdictions of the respective governments, and introduce into our judicial proceedings the utmost confusion. It is not in the power of congress to transfer any part of the jurisdiction which the constitution has vested in the federal government. If this can be done by congress, to any extent, it may be done without. limitation : and in this way the powers *260 of Ibe federal government might be lessened or utterly destroyed.
A federal judicial officer, either by- act of congress or as an incident to his office, has the power to administer oaths. This power, however, can only be exercised within the jurisdiction of the federal government, and in cases, where an oath is required or sanctioned by the laws of- that government.- And so of the judicial officers of a state. If either officer act beyond the sphere of his appropriate jurisdiction, his act is a nullity.
In this view of the case, there is no difference in principle between administering an oath, and any other act which belongs to the judicial character of the officer.
By an act of congress, depositions may be taken befoie certain slate officers, in .any cause pending in the courts of the United States. Among these officers a justice of the peace is not named, unless he be a judge of a county court: and it has been often decided, that a deposition taken before a justice of the peace, who is not a member of a county court, or before any other state officer than those named in the act, cannot be read in évidence.
Under the state jurisdiction, the.justice may.have power to administer oaths, but he is not recognized as having a right to exercise this power under the act of congress. And would any one contend that a deposition taken before a justice, under such circumstances, could lay the foundation of a- prosecution for perjury ?
The state officers named in the act, as having the power to '.take' depositions, do not act, in taking them, under their general power to administer oaths as state officers ; but under the- special authority of the act of congress. Any other per-soné designated by their official characters, might as well have been named in the act of congress, though they had no power under any law of the state, to administer oaths. The.officers named in the act, are referred to as descriptive of persons who may exercise the authority given, and for no other purpose.
In the argument of this case, for the prosecution, a great number of acts of congress were read, granting pensions and for other purposes, in which state officers were specially authorized to administer oaths. This I take to be a conclusive ex *261 position by congress, against the powers of state officers to administer oaths for federal purposes. Would a special authority have been vested in them for this purpose, if, in the opinion of congress, they possessed a general authority under the state laws ? But one answer can be made to this inquiry. Congress knew well that state officers could exercise under their general authority, no such power, and it was expressly conferred on them by an act of federal legislation.
If this power to administer an oath by a judicial officer of a state, in matters of a civil' nature which relate to the federal jurisdiction, cannot be recognized as legal; much less should it be sanctioned, as laying the foundation of a prosecution for perjury. The-false swearing with which the defendant stands charged, though not technically perjury, is punished as such.
Under a general law of a state which defines the offence and provides for the punishment of perjury, would, a false oath taken before a federal judicial officer be punishable 1 Would it not be essential, in such a case, to show that the person administering the oath, acted under the authority of the state 1 Could, the state tribunals recognize any other authority than that which belongs to their own jurisdiction1? If no state law authorises an oath to be administered by a federal officer, can he administer it, for state purposes ? Could the acknowledge-meiff of a deed or other instrument be made before a federal judge, under a general statute of a state requiring such instrument to be acknowledged before a judge of the court? All these questions must be answered in the negative.
To-say that the federal officer has a right to administer oaths by an act of congress, or as' an incident, of his office, does not remove the objection. Can a judge of the federal court exercise his functions in a state tribunal'? Such a pretension would be too absurd to merit serious consideration. And, yet, is there any difference in principle between a1 federal judicial officer discharging his function in a state tribunal, and administering an oath for state purposes. Does he not, in both cases, exercise the functions of his office under the jurisdiction of the state.
It is; -admitted that the legislature of a state, as well as congress, may authorise any persons, by-name, or by .their official designations, to administer oaths in all cases required, under *262 I he law's of their respective governments: but I am examining the case of the defendant where no statutory power to administer the oath, is pretended to have been given by congress.'
Any official act of a federal officer, under the jurisdiction of a state, which has not authorised such act by him, is extra judicial, and in no point of view legal. Nor can an oath administered under such circumstances, however false, be punishable under a general statute of the state against false swearing. The .act of administering the oath, being done . without authority, is void. It subjects.the false swearer to no greater penalty than if it had been administered by a private citizen, without any pretence of power.
The law, it may be said, denounces the punishment for false swearing generally. -And can there be a false swearing, within'the meaning of the act, before a person who has no authority to administer'an oath ?
From these considerations it would seem that no punishment could be inflicted by a state tribunal, under an act against false swearing, where the. oath had been administered by a federal officer, whose act was not sanctioned by any law of the state.
And if this be the case under the jurisdiction of a state, is it not equally clear that the same principle applies to the federal jurisdiction 1 If a state tribunal cannot punish for false swearing, where the oath is administered by a federal officer without any sanction by the laws of the state; can a federal tribunal punish for false swearing, where the oath is administered by a state officer without any sanction by the laws of the union.
The act of cougre.ss against false swearing is general, and no reference is made to the authority under which the oath shall be administered : but does it not follow as a consequence, that the oath must be administered under the same jurisdiction which enacted the law ? Did congress intend to punish an offence committed before a state tribunal? They had the power to punish false swearing, .before any individual whom they might have authorised to administer the oath; but in this law they have not so provided, nor in any other law which relates to the case under consideration. It therefore follows, in this view, that justice Reed,-in administering the oath to the *263 defendant, acted,without authority, and the affiant cannot be subjected to the penalty for false swearing.
If- this offence may be perpetrated béfore a state officer, because the law denouncing it is general; on the same ground, may not a state tribunal inflict the penalties of this law ?
. But it is insisted that under the rule of the treasury department which required the oath to substantiate the claim, the justjce was authorised to administer, the oath. .
Can this position be sustained?
It has been shown that justice Reed, in administering the oath, did not act under the authority of the state, or of any law of congress;, and the question is fairly presented, whether the secretary of the treasury has the power to invest any individual with a competent authority to administer oaths, in matters which relate to the treasury department.
That the secretary of the treasury, .who, in the discharge of his duties, is required to investigate and decide annually, numerous and various claims on the treasury, may require certain claims to be substantiated by oath, is not controverted.
But this admission goes no length in sustaining the prosecution : for it does not follow, if. the secretary require an oath in proof of a claim, that he can invest any individual with the power to administer such oath.
In the first place, there is no necessity for the exercise of the power, by the secretary ; because there are officers of the United States who are duly authorised to administer oaths. But there is- no power, in any executive officer to clothe any individual with the important authority of administering oaths. It is a power which belongs to the legislative department, and can no where else be exercised. •
In certain cases courts may issue commissions to take, depositions, and these give authority to administer oaths, in the cases stated; but this is done under the express sanction of law. Can the secretary himself administer an oath which shall lay the foundation of a prosecution for perjury ? But it is said that it has been the usage of the department to act on oaths administered by state officers. That such has been the usage I can entertain no doubt; but there is no -proof before this court, nor was there any before the circuit court, that such usage exists *264 ' in cases where congress have given no authority to administer the oath.
But suppose the usage did extend to cases where no authority had been given by congress to a state oilicer to administer an oáth ; could usage constitute the law in such a case. The usage of the department may not only fix the rule of decision, but, in many cases, the ground and extent of a claim against the government. But this usage cannot extend beyond the action of the department.
The secretary of the treasury requires oaths to be administered by state officers, in proof of certain claims, to guard the public interest; but does'that legalize such a procedure 1 It may prove salutary for the purpose intended ; but does it follow that the oaths administered by any one, if false, are within the act of congress against false, swearing 1 This act- is a highly penal one. A conviction under it destroys the character of the individual, and deprives him of his liberty. Like all other criminal acts, it should receive a strict construction, and no person should be subjected to its penalties who has not clearly violated its letter and spirit,
• ■ In one sense it may be said, that the defendant, Bailey, ih within the law, because the law punishes false swearing; and he has sworn falsely before a justice of the peace. But the question recurs, had this justice the power to administer the oath 1 If he had not, Bailey has not incurred the penalties of the law.
A decision from 8 East 364, has been read, as ■ applicable to the case now under consideration. That was a case in which the court of king’s bench decided that an affidavit taken in a foreign country, was sufficient, under the practice of the court, to hold a defendant to bail. But lord Ellenborough says, that “ in none of these cases can the party making a false .affidavit be indicted, specifically, for the crime of perjury in the courts of this country; but in all of them, as far as the party is punishable at all, he is punishable, for, a misdemean-our, in procuring the court to make an order to hold to bail, by means, and upon the credit of a false and fraudulent voucher of a fact, prod iced and published by him for that purpose;”
It appears, from this opinion, that the false swearing in a foreign affidavit could not lay the foundation of a criminal *265 prosecution ; but the use which was made of such affidavit, and -the effect produced by it — these constitute the gist' of the prosecution.'
A false affidavit, to hold to bail, if made in England, and before^ peison competent to administer an oath, would be perjury. But lord Elleriborough says, in substance, if the oath be administered in a foreign country, or in Ireland or Scotland, though false, does not subject the affiant to -a prosecution for perjury, nor for any criminal prosecution founded exclusively upon the false swearing.
If, by the practice of the court, a mere statement by the plaintiff were sufficient to hold to bail, and such statement were made falsely,, it would subject the plaintiff to punishment by the common law; for, in the language of the judge, “procuring the court to make an order to hold to bail, by means and upon the credit of a false and fraudulent voucher of a fact produced and published by him for that purpose”
This opinion, it ’ appears to me, does not conflict with the view-1 have taken of this case.
Brit it is insisted, that the law-against false swearing was passed with a knowledge by congress of the usage of the department to require oaths before state officers; and that it must be presumed, they intended to sanction such usage. Is such a presumption admissible in a criminal case ? The effect of the law must be limited, in its penalties, to the jurisdiction under which it was enacted; and it should not be construed to embrace cases which do ndt come-legitimately within its purview.
- A court, in giving a construction to a highly penal law, will look at its letter and spirit, and cannot extend its provisions by construction, from motives of policy which maybe supposed to have influenced the legislature.
If state and federal officers, as such, may exercise their functions within the jurisdiction of either government, to any extent; I see no principle by which their powers shall be limited. Such a course, would blend the jurisdictions of the federal and state governments, and be likely to lead-to the most serious collisions.
I consider this question as one of great importance,.and differing, as I do, from the opinion of the court, I have felt bound to give the reasons for my opinion,
*266 This cause came on to be heard on the transcript of the record from the. circuit court of the United S,tates for the district, of Kentucky; and on the point on which the judges of the said circuit court were opposed in opinion, and which was certified to this, court for its opinion, agreeably to the act of congress in such case made and provided; and was argúed by counsel: on consideration whereof, it is ordered and'adjudged by this Court, that it be certified to the said circuit, court, as the opinion of this court, that the said Josiah Reed, named in the certificate of division, being a justice of the peace of the commonwealth of Kentucky, authorized by the laws of that státe to administer oaths, had authority and jurisdiction to administer- . the oath and take the affidavit in the said certificate of division mentioned, and that if the facts stated therein were falsely sworn to,.the case is within the act of congress of the 1st day of March 1823, referred to in the same certificate.